MacLeod, Bonnie H., J.

PROCEDURAL HISTORY

After exhausting his administrative remedies, the plaintiff, Richard Gasior, brought this action in June of 2001 alleging that his former employer, the defendant Massachusetts General Hospital, violated his rights under G.L.c. 151B, §4 (Count I), and the Mas *327 sachusetts Equal Rights Act (MERA), G.L.c. 93, §103 (Count II), by barring his return to work following a medical leave of absence. In his complaint, the plaintiff requested relief in the form of reinstatement, back pay, front pay, lost benefits, emotional distress, damages, punitive damages, and attorneys fees and costs.
One week before the trial of this matter was to commence and despite the plaintiffs motions to advance the trial date due to his terminal illness, on September 21, 2003, the plaintiff died.[1] The plaintiffs estate has moved to substitute the estate for the plaintiff. Before the court is the defendant’s motion to dismiss both counts of the complaint on the grounds that they do not survive the plaintiffs death pursuant to G.L.c. 228, §1, and that the plaintiffs claim under G.L.c. 93, §103, is also barred by the exclusivity provision of G.L.c. 151B. For the following reasons, the defendant’s motion is allowed in part and denied in part.

BACKGROUND

The allegations in the complaint, taken as true for purposes of the pending motion only, are as follows. The plaintiff worked as a plumber for the defendant from 1981 to early 2000, when he took a medical leave of absence for a heart condition and treatment. Although the plaintiffs physician cleared him to return to work in August of 2000 and the plaintiff was fully able to perform the essential functions of his job with or without reasonable accommodation, the defendant refused to permit the plaintiff to return, and instead posted job openings for plumbers.

DISCUSSION

Pursuant to Mass.RCiv.P. 12(b)(6), a court must dismiss a complaint for failure to state a claim where “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977). For purposes of the motion to dismiss, the court accepts as true the well-pleaded factual allegations of the complaint, as well as any inferences that can be drawn therefrom in the plaintiffs favor. See Eyal v. The Helen Broadcasting Co., 411 Mass. 426, 429 (1991); Cacciola v. Nellhaus, 49 Mass.App.Ct. 746, 754 (2000). A complaint should not be dismissed “unless it appears with certainty that [the plaintiff] is entitled to no relief under any combination of facts that could be proved in support of [the] claim.” See Brum v. Town of Dartmouth, 44 Mass.App.Ct. 318, 322 (1998) (questioned on other grounds).

1. Survivability of Handicap Discrimination Claim

The issue before this court, which has not been previously decided by Massachusetts appellate courts, is whether an employment discrimination claim under G.L.c. 151B, §4(16),[2] survives the plaintiffs death. The Massachusetts Survival Statute, G.L.c. 228, §1, does not expressly state whether a discrimination claim survives the death of a plaintiff. It reads in pertinent part:
In addition to actions which survive by the common law, the following shall survive:
(2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person; ... or (d) for damage to real or personal property; . . .
In Massachusetts, contract actions survive while tort claims not falling within the exceptions listed in the Survival Statute do not. See Rendek v. Sheriff of Bristol County, 440 Mass. 1017, 1017 (2003); McStowe v. Bornstein, 377 Mass. 804, 806-07 (1979). The reasoning behind this principle is that “actions seeking the vindication of personal rights, in the absence of a statute, do not survive while those seeking redress for damage to property rights do survive.” Sheldone v. Marino, 398 Mass. 817, 819 (1986) (will contest is in nature of a property right and survives contestant’s death). Contrast Pine v. Rust, 404 Mass. 411, 417-18 (1989) (violation of wiretap statute did not survive plaintiff s death because privacy interests protected by the statute lack clear definition and are ephemeral). Thus, claims for punitive damages abate, whereas claims for compensatory damages may survive. Harrison v. Loyal Protective Life Ins. Co., 379 Mass. 212, 216-17 (1979).
Employment discrimination claims are analogous to common-law actions sounding in both tort and contract. See Dalis v. Buyer Advertising, Inc., 418 Mass. 220, 223 (1994). Because the plaintiffs claimed damages arising out of the alleged employment discrimination are similar to those in both tort and contract actions, the court considers whether the plaintiffs c. 15 IB claim survives, either under the category of a tort action for “other damage to the person,” as a tort for damage to personal property, as a common-law contract claim, or as a hybrid of the above. In conducting this type of inquiry, our courts “have looked with disfavor on rigid procedural distinctions between contract and tort and are more concerned today with substance than with form.” See McStowe v. Bornstein, 377 Mass, at 808 (plaintiffs claim against estate of attorney alleging that attorney negligently failed to commence action on plaintiffs behalf before expiration of limitations period survived attorney’s death because plaintiff and deceased attorney had contractual relationship and complaint adequately presented claim for breach of attorney’s contractual obligation to use reasonable care in representing plaintiff). Moreover, there is a “tendency to extend survival statutes, or to construe them liberally to preserve a cause of action where there is doubt.” W. Page Keeton et al., Prosser and Keeton on the Law of Torts §126, at 943 (5th ed. 1984).
The Legislature enacted the Survival Statute to abrogate Massachusetts’ common-law rule that tort *328 actions were personal and, thus, did not survive the death of either party. Sheldone v. Marino, 398 Mass, at 818. The Survival Statute “does not operate to restrict the types of actions which survive but was intended to expand on the number of actions which do survive.” Id. at 819. Because it is a
flexibly drawn statute which gives a partial listing of torts that should survive followed by the broad phrase “or other damage to the person” . . . [it] clearly leaves room to accommodate other torts which the court might deem to involve damage to the person. Thus the statute is sufficiently dynamic to allow for a change injudicial conceptions of what types of harm constitute legally redressable “damage to the person.”
Harrison v. Loyal Protective Life Ins. Co., 379 Mass. at 215.
Our courts have long recognized that a violation of G.L.c. 15 IB is not a tort, but that claims under c. 151B are analogous to torts and have tort-like aspects. Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 391 (2005) (G.L.c. 15 IB unlawful retaliation claims are not torts for purposes of applying charitable immunity damages cap, as G.L.c. 151B created new rights that did not exist under common law); Stonehill College v. Massachusetts Comm’n Against Discrimination, 441 Mass. 549,560 (2004) (listing Massachusetts cases identifying tort-like aspects of c. 15 IB, §9, employment discrimination claims, and noting decisions by United States Supreme Court and circuit courts analogizing discrimination claims to torts of defamation, intentional infliction of emotional distress, and wrongful discharge); Thomas v. EDI Specialists, Inc., 437 Mass. 536, 539 (2002) (although in some but not all respects, c. 15 IB actions are analogous to tort actions, they are not to be treated as tort claims for purposes of right to contribution under G.L.c. 23 IB).
In determining whether a claim for a tort-like stat-utoiy violation or a common-law tort survives as one for “other damage to the person,” the Supreme Judicial Court has considered the nature of the alleged injury, the type of relief sought, and legislative intent and policies underpinning the relevant statutes. See Pine v. Rust, 404 Mass, at 417-18 (in deciding whether violation of wiretap statute claim survived plaintiffs death, court focused on nature of interests protected by statute, type of damages granted by Legislature, and whether plaintiff sustained actual damage); Harrison v. Loyal Protective Life Ins. Co., 379 Mass, at 216 (tort of intentional infliction of emotional distress survived plaintiffs death because emotional distress is “damage to the person” and Legislature intended to permit the survival of actions for which recovery was compensatory rather than punitive).
“Damage to the person” encompasses not only physical injury, but also injury to a person’s mind and emotions. Harrison v. Loyal Protective Life Ins. Co., 379 Mass, at 216. The plaintiff here claims to have not only suffered a violation of his personal right to be free from discrimination, which cannot be the basis of a survivable claim, see Pine v. Rust, 404 Mass, at 417-18, but also to have suffered emotional distress which qualifies as a tort claim for “damage to the person.” See Harrison v. Loyal Protective Life Ins. Co., 379 Mass, at 216; Glanz v. Vernick, 750 F.Sup. 39, 43 (D.Mass. 1990) (in action for emotional distress damages for disability discrimination in violation of §504 of the Rehabilitation Act, emotional distress qualified as “damage to the person” under G.L.c. 228, §1, permitting recovery of compensatory but not punitive damages).
The plaintiffs claim for emotional distress damages is one of compensatory relief which therefore survives under G.L.c. 228, §1. See Harrison v. Loyal Protective Life Ins. Co., 379 Mass, at 216. This conclusion is in line with the legislative mandate that G.L.c. 151B, §9, be “construed liberally for the accomplishment of the purposes of c. 151B, which is to “provide judicial and administrative remedies for destructive acts of workplace discrimination." Ayash v. Dana-Farber Cancer Institute, 443 Mass, at 391-92. The main object of this judicial proceeding pursuant to G.L.c. 151B, §9, is “to recover damages for the individual victim of unlawful discrimination." Stonehill College v. Massachusetts Comm’n Against Discrimination, 441 Mass, at 562-63 (in contrast to the object of G.L.c. 151B, §5, administrative proceedings within MCAD is to vindicate public’s interest in reducing workplace discrimination by deterring and punishing discrimination). See also Conway v. Electro Switch Corp., 402 Mass, at 385,387 (1988) (Section 9 reveals “a plain legislative intent to afford victims of discrimination the legal remedy of compensatory damages”).
The plaintiffs claim to lost wages also is one for compensatory damages. See Conway v. Electro Switch Corp., 402 Mass, at 388. General Laws c. 15 IB entitles a prevailing plaintiff to recover lost compensation. G.L.c. 151B, §9. The substance of the action may be viewed as a tort of wrongful discharge for damage to personal property, which survives the plaintiffs death under G.L.c. 228, § 1 (2)(d). Cf. Conway v. Electro Switch Corp., 402 Mass, at 388 (in ruling that award for damages for lost wages under c. 151B, §9, includes loss of capacity to generate future earnings, court noted that such damages are awarded under traditional Massachusetts tort law).
As noted above, employment discrimination claims are also analogous to common-law actions sounding in contract. See Dalis v. Buyer Advertising, Inc., 418 Mass. at 223. Although exactly what constitutes a contract action has not been rigidly defined, see Rendek v. Sheriff of Bristol County, 440 Mass, at 1017, a cause of action in contract survives when it is founded upon an implied or quasi-contract or an express contract. Treasurer Receiver Gen. v. Sheehan, 288 Mass. 468, 471 (1934). Construing the plaintiffs *329 complaint generously as this court must on a motion to dismiss, see New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 29 (1988), the c. 15IB claim here can be read as essentially contractual or quasi-contractual in nature, as it is predicated upon the plaintiffs 20-year employment relationship with the defendant and seeks to recover lost wages resulting from the defendant’s breach of contract by terminating the plaintiffs employment and/or by failing to reinstate him following his medical leave of absence. Cf. Rendek v. Sheriff of Bristol County, 440 Mass. at 1017-18 (claim of violation of G.L.c. 35, §51, for county employee’s back pay is in substance contractual or quasi-contractual, as statute controlled critical term of employment: grounds for termination); McStowe v. Bornstein, 377 Mass. at 808 (construing legal malpractice claim as breach of contractual relationship between client and attorney which therefore survived attorney’s death). Consequently, in light of the remedial purpose of G.L.c. 15 IB and the Survival Statute and to the extent that the plaintiff seeks redress for damage to his property rights in lost wages, the court concludes that Count I adequately states a contract action for purposes of G.L.c. 228, §1. Cf. Sheldone v. Marino, 398 Mass. at 819; McStowe v. Bornstein, 377 Mass. at 808; Lyon v. Triram Corp., 18 Mass. L. Rptr. 419, 421-22 (Mass.Super. Oct. 29, 2004) (Lauriat, J.) (c. 93A claim of damages for lost income, medical expenses, and damage to equipment survived plaintiffs death because c. 93A damages are to compensate plaintiff for loss of money or property; in contrast, c. 93A punitive damages are to vindicate plaintiffs rights and do not survive).
There is no doubt, however, that the plaintiffs claim for punitive damages abates as it is punitive rather than compensatory in nature. See Harrison v. Loyal Protective Life Ins. Co., 379 Mass, at 216-17. In sum, Count I survives insofar as the complaint seeks compensatory but not punitive damages, and the motion to dismiss is allowed to the extent that Count I claims punitive damages.[3]

2. Massachusetts Equal Rights Act, G.L.c. 93, §103

General Laws c. 93, §103, provides in relevant part:
(a) Any person within the commonwealth, regardless of handicap or age as defined in [c. 151B] shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts, inherit, purchase, lease, sell, hold and convey real and personal property, sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under Article CXTV of the Amendments to the Constitution.
The defendant argues, and the plaintiff does not deny, that the plaintiffs MERA claim is barred by the exclusivity provision of c. 151B. MERA does not create an independent right to vindicate an alleged wrong that can otherwise be redressed under G.L.c. 151B. Cargill v. Harvard University, 60 Mass.App.Ct. 585, 604 (2004), citing Green v. Wyman-Gordon Co., 422 Mass. 551, 557-58 (1996). General Laws c. 151B provides the exclusive state law remedy for employment discrimination complaints. See G.L.c. 151B, §9. “[S]o long as it is determined ‘that G.L.c. 15IB is or was available to the plaintiff, the plaintiff would have no viable c. 93, §103, claim . . .’ ” Cargill v. Harvard University, 60 Mass.App.Ct. at 604, quoting Agin v. Federal White Cement, Inc., 417 Mass. 669, 672 (1994). Because the plaintiff had a right to seek redress for the alleged handicap discrimination pursuant to c. 151B, Count II must be dismissed.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to dismiss:
(1) is DENIED as to Count I insofar as the plaintiff claims compensatory damages and ALLOWED insofar as the plaintiff seeks punitive damages; and
(2) is ALLOWED as to Count II.

During the February 2003 pretrial conference, the original trial date in this matter was set for October 6, 2003. On March 31, 2003, the plaintiff filed an emergency motion to advance the trial date due to his terminal illness of gastric cancer. The court (Sikora, J.) granted the motion and advanced the trial date to July 28, 2003. In mid-July, the Clerk notified counsel that the trial date of July 28 was no longer available, and rescheduled the trial to August 18, 2003. Due to a scheduling conflict with the week after August 18, the defendant then moved to continue the trial date, which was allowed by the court (Connor, J.), and the trial was rescheduled to commence on September 29, 2003. The court notes that G.L.c. 151B, §9, provides that, “An action filed pursuant to this section shall be advanced for a speedy trial at the request of the petitioner.”

G.L.c. 151B, §4(16), provides that it is unlawful “For any employer ... to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation . . .”

That G.L.c. 151B, §9, also authorizes awards for punitive damages and that the plaintiffs complaint seeks such an award does not alter this conclusion. The statute is primarily remedial in nature. See G.L.c. 15 IB, §9. “Where a Legislature intends a statute to be remedial, it is penal only if the statutory scheme is so punitive either in purpose or effect as to negate the Legislature’s intention to establish a civil remedial mechanism.” Opinion of the Justices, 423 Mass. 1201, 1221 (1996) (quotations and ellipses omitted). Nothing in G.L.c. 15 IB, §9, can be reasonably viewed as negating the Legislature’s plain intention to create a remedial scheme in G.L.c. 151B.